**Connell Foley LLP**
One Newark Center
1085 Raymond Boulevard, Nineteenth Floor
Newark, New Jersey 07102
973-436-5800
Attorney for Plaintiff, Wingate Inns International, Inc.

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| WINGATE INNS INTERNATIONAL, INC., a Delaware Corporation,<br><br>      Plaintiff,<br><br>vs.<br><br>UNIVERSAL HOSPITALITY SOLUTIONS, LLC, an Arizona limited liability company; and SCOTT NADEL, an individual,<br>      Defendants. | Civil Action No.  21-cv-19809(KM)(AME)<br><br>Hon. André M. Espinosa, U.S.M.J.<br><br>**JOINT DISCOVERY PLAN**<br><br>Initial Scheduling Conference:<br><br>August 1, 2022 at 2:00 p.m. |

1.  Set forth the name of each attorney appearing, the firm name, address and telephone number and facsimile number of each, designating the party represented.

**Bryan P. Couch, Esq.**
**Connell Foley LLP**
**One Newark Center**
**1085 Raymond Boulevard, 19th Floor**
**Newark, New Jersey 07102**
**T: (973) 436-5800**
**F: (973) 436-5801**
**Attorneys for Plaintiff, Wingate Inns International, Inc.**

**Ryan Milun**
**The Milun Law Firm, LLC**
**20 Commerce Drive, Suite 135**
**Cranford, New Jersey 07016**
**862-702-5010 ex 1001**
**Ryan.milun@milunlaw.com**

And

**Joyce Lindauer (to be admitted pro hac vice)**
**Joyce W. Lindauer Attorney, PLLC**
**1412 Main St., Suite 500**
**Dallas, Texas 75202**

**Telephone: (972) 503-4033**
**Facsimile: (972) 503-4034**
**Email: joyce@joycelindauer.com**
*Attorneys for Defendants, Universal Hospitality Solutions, LLC and Scott Nadel*

2.  Set forth a brief description of the case, including the causes of action and defenses asserted.

**On or about June 11, 2019, Wingate Inns International, Inc. ("WII") entered into a franchise agreement with Universal Hospitality Solutions, LLC ("UHS") (the "Franchise Agreement") for the operation of a 77-room Wingate® guest lodging facility located at 3019 East Idaho Street, Elko, Nevada 89801, designated as Site No. 54619-15025-01 (the "Hotel"), for a twenty-year term.  On or about June 11, 2019, WII and UHS entered into a SynXis Subscription Agreement (the "SynXis Agreement"), which governed UHS's access to and use of certain computer programs, applications, features, and services, as well as any and all modifications, corrections, updates, and enhancements to same.**

**WII alleges that pursuant to Section 6, section 7, and Schedule C[1] of the Franchise Agreement, and section 5 of the SynXis Agreement, UHS was required to make certain periodic payments to WII for royalties, system assessments, taxes, interest, SynXis fees, initial fees, and other fees (collectively, "Recurring Fees").  Pursuant to section 3 of the Franchise Agreement, UHS was required, among other things, to make renovations to the Facility, in order to bring the Facility into compliance with "System Standards," "Approved Plans," and/or a "Punch List," all of which were defined in or attached to the Franchise Agreement, and to achieve and maintain certain scores on periodic quality assurance inspections conducted by WII. Pursuant to section 3.2 of the Franchise Agreement, UHS was required to operate the Facility in compliance with WII's "System Standards," as defined in the Franchise Agreement, including WII's quality assurance requirements.**

**Pursuant to section 11.2 of the Franchise Agreement, WII could terminate the Franchise Agreement, with notice to UHS, for various reasons, including UHS's (a) failure to pay any amount due WII under the Franchise Agreement, (b) failure to remedy any other default of its obligations or warranties under the Franchise Agreement within 30 days after receipt of written notice from WII specifying one or more defaults under the Franchise Agreement, and/or (c) receipt of two or more notices of default under the Franchise Agreement in any one year period, whether or not the defaults were cured.  Pursuant to section 12.1 of the Franchise Agreement, UHS agreed that, in the event of a termination of the Franchise Agreement pursuant to section 11.2, it would pay liquidated damages to WII in accordance with a formula specified in the Franchise Agreement.  Section 12.1 specifically set liquidated damages for the Facility at $2,000.00 for each guest room that UHS was authorized to operate under Schedule B of the Franchise Agreement.  Pursuant to section 17.4 of the Franchise Agreement, UHS agreed that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [Franchise] Agreement or collect amounts owed under this [Franchise] Agreement."**

---

[1] By Amendment to the Franchise Agreement dated June 11, 2019 (the "Amendment"), the parties deleted Schedule C of the Franchise Agreement in its entirety and replaced it with the revised Schedule C attached to the Amendment.

6495120-1

**Effective as of the date of the Franchise Agreement, Scott Nadel provided WII with a guaranty (the "Guaranty") of UHS's obligations under the Franchise Agreement. Pursuant to the alleged terms of the Guaranty, Scott Nadel agreed to pay the costs, including reasonable attorneys' fees, incurred by WII in enforcing its rights or remedies under the Guaranty or the Franchise Agreement.**

**WII alleges that beginning in 2020, UHS repeatedly failed to (i) operate the Facility in accordance with WII's System Standards and (ii) pay Recurring Fees to WII, in breach of its obligations under the Franchise Agreement. WII issued multiple default notices to UHS advising UHS that it was in breach of the Franchise Agreement and if the defaults were not cured, then the Franchise Agreement might be subject to termination. Despite these notices, UHS failed to cure its defaults.**

**By letter dated January 7, 2022, WII terminated the Franchise Agreement, effective January 7, 2022, and advised UHS that it was required to pay to WII as liquidated damages for premature termination the sum of $154,000.00 as required under the Franchise Agreement, and all outstanding Recurring Fees through the date of termination.**

**Nadel filed an Answer to the Complaint on December 30, 2021, generally denying liability and asserting numerous Affirmative Defenses. UHS did not file an Answer.**

**WII filed an Amended Complaint on June 1, 2022 stemming from defendants' premature termination of the Franchise Agreement and seeks liquidated damages. Nadel accepted service and advised he was retaining counsel, who would potentially represent Nadel and UHS. Counsel has now been retained and an Answer to the Amended Complaint on behalf of both defendants will be filed shortly.**

3. Have settlement discussions taken place? **Yes __X__ No _____**
   If so, when?

   (a) What was plaintiff's last demand?

   (1) Monetary demand: **Full Amount of Claim plus attorneys' fees and costs, in excess of $464,074.65 as of June 1, 2022.**

   (2) Non-monetary demand: _____

   (b) What was defendant's last offer?

   (1) Monetary offer: **$75,000**

   (2) Non-monetary offer: _____

4. The parties [**have __X__ have not _____**] exchanged the information required by Fed. R. Civ. P. 26(f).

6495120-1

5. The parties [**have** \_\_\_**X**\_\_\_ **have not** _____] exchanged the information required by Fed. R. Civ. P. 26(a)(1). If not, state the reason therefor.

6. Explain any problems in connection with completing the disclosures required by Fed R. Civ. P. 26(a)(1).

   **None.**

7. The parties [**have** \_\_\_\_**X**_____ **have not** _____] conducted discovery other than the above disclosures. If so, describe.

   **By letter dated May 16, 2022, WII served Nadel with Initial Interrogatories, First Request for Production of Documents, First Requests for Admissions, and Notice of Deposition for August 24, 2022.  Responses to the Requests for Admission were provided on July 28, 2022 along with a proposed stipulation under Fed.R.Civ.Pro. 29 allowing for an extension of time for the responses to the Requests for Admission. Responses to the Initial Interrogatories and Requests for Production of Documents will be provided in accordance with the timeframes in this Joint Discovery Plan and any Order of the Court.**

8. Proposed joint discovery plan:

   (a) Discovery is needed on the following subjects:

   **(1) Defendants' termination of the Franchise Agreement; (2) Defendants' failure to pay Recurring Fees and liquidated damages due to WII pursuant to the terms of the Franchise Agreement and Guaranty; and (3) Defendants' Affirmative Defenses.**

   (b) Discovery [**should** _____ **should not** \_\_\_\_\_**X**\_\_\_\_\_] be conducted in phases or be limited to particular issues. Explain.

   (c) Proposed schedule:

   (1) Fed. R. Civ. P. 26 Disclosures: **Previously exchanged.**

   (2) E-Discovery conference pursuant to L. Civ. R. 26.1(d): **N/A.**

   (3) Service of initial written discovery: **August 31, 2022**.

   (4) Maximum of **25** Interrogatories by each party to each other party.

   (5) Maximum of **no more than 5** depositions to be taken by each party.

   (6) Motions to amend or to add parties to be filed by **October 1, 2022**.

   (7) Factual discovery to be completed by **February 1, 2023**.

   (8)  Plaintiff's expert report due on **None anticipated**.

   (9)  Defendant's expert report due on **None anticipated at this time; however defendants reserve the right to retain an expert and provide a report should an expert become necessary.**

   (10)  Expert depositions to be completed by **None anticipated**.

   (11)  Dispositive motions to be served within **45** days of completion of discovery.

 (d) Set forth any special discovery mechanism or procedure requested. **None anticipated.**

 (e) A pretrial conference may take place on **TBD**.

 (f) Trial date: **TBD (Non-Jury Trial).**

9. Do you anticipate any special discovery needs (i.e., videotape/telephone depositions, problems with out-of-state witnesses or documents, etc.)? **Yes _____ No\_\_\_\_X\_\_\_\_.**

 If so, please explain.

10. Do you anticipate any issues about disclosure or discovery of electronically stored information, including the form or forms in which it should be produced?

 **Yes _____ No \_\_X\_\_\_\_\_.**

 If so, how will electronic discovery or data be disclosed or produced? Describe any agreements reached by the parties regarding same, including costs of discovery, production, related software, licensing agreements, etc.

11. Do you anticipate entry of a Discovery Confidentiality Order? See L.Civ.R. 5.3(b) and Appendix S.

 **Yes _____ No \_\_\_\_X\_\_\_\_.**

12. Do you anticipate any discovery problem(s) not listed above? Describe.

 **Yes _____ No \_\_\_X\_\_\_\_.**

13. State whether this case is appropriate for voluntary arbitration (pursuant to Local Civil Rule 201.1 or otherwise) or mediation (pursuant to Local Civil Rule 301.1 or otherwise).

 If not, explain why and state whether any such procedure may be appropriate at a later time (i.e., after exchange of pretrial disclosures, after completion of depositions, after disposition or dispositive motions, etc.).

6495120-1

**The parties would consider the use of mediation or a settlement conference to resolve this dispute.**

14. Is this case appropriate for bifurcation? **Yes** _____ **No** \_\_\_\_\_**X**\_\_\_\_\_

15. An interim status/settlement conference (with clients in attendance), should be held in

    **TBD (clients may appear for settlement conference virtually or telephonically)**.

16. We [**do** _____ **do not** \_\_\_\_\_**X**\_\_\_\_\_] consent to the trial being conducted by a Magistrate Judge.

17. Identify any other issues to address at the Rule 16 Scheduling Conference.

    **None.**


**Connell Foley LLP**
Attorneys for Plaintiff,
Wingate Inns International, Inc.


By: \_\_\_*/s/ Bryan P. Couch*_____
       Bryan P. Couch
Date:   July 28, 2022


**The Milun Law Firm, LLC and**
**Joyce W. Lindauer Attorney, PLLC**
Attorneys for Defendants


By: \_\_\_*/s/ Ryan Milun*_____
       Ryan Milun
Date: July 28, 2022

6495120-1