```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| WINGATE INNS INTERNATIONAL, INC., a Delaware Corporation,<br><br>      *Plaintiff*,<br><br>  v.<br><br>UNIVERSAL HOSPITALITY SOLUTIONS, LLC, an Arizona Limited Liability Company; and SCOTT NADEL, an individual,<br><br>      *Defendants*. | No. 2:21-cv-19809 (MEF)(AME)<br><br>**OPINION and ORDER** |

**Table of Contents**

I.  **Background**

    **A.** **Facts**

    **B.** **Procedural History**

    **C.** **The Motion**

    **D.** **The Court's Approach**

II. **Standard of Review**

III. **Liability**

    **A.** **Franchise Agreement**

        **1.** **Validity**

        **2.** **Nonperformance**

        **3.** **Damages**

        **4.** **Conclusion**

    **B.** **Guaranty**

        **1.** **Validity**

        **2.** **Nonperformance**

       **3.**    **Damages**

**IV.**  **Damages**

    **A.**   **Recurring Fees**

    **B.**   **Liquidated Damages**

    **C.**   **Attorneys' Fees**

    **D.**   **Prejudgment Interest**

**V.**  **Conclusion**

\* \* \*

A hotel franchisor and a hotel operator entered into a franchise agreement. An individual guaranteed it.

The hotel operator stopped paying monthly fees due under the agreement.

The hotel franchisor then sued the hotel operator and the guarantor, principally for breaches of the franchise agreement and the guaranty.

The hotel franchisor has now moved for summary judgment.

The motion is granted in part.

**I.**  **Background**

    **A.**   **Facts**

The evidence, as relevant for now, is set out here.

In 2019, a hotel franchisor ("Hotel Franchisor"[1]) and hotel operator ("Hotel Operator"[2]) entered into an agreement ("Franchise Agreement"[3]).

---

[1] Wingate Inns International, Inc.

[2] Universal Hospitality Solutions, LLC.

[3] The Franchise Agreement is Exhibit A to the Affidavit of Kendra Mallet in Support of Plaintiff's Motion for Summary Judgment Against Defendants ("Mallet Affidavit").

2

Under the Franchise Agreement, the Hotel Operator had to pay monthly fees, keep up with franchise standards, and pass certain quality inspections.  See Franchise Agreement §§ 3.2, 3.7, 7.

There was also a guaranty ("Guaranty"[4]).  Under the Guaranty, if the Hotel Operator did not fulfill specific obligations under the Franchise Agreement, a particular guarantor ("Guarantor"[5]) had to step in.  See Guaranty at 1.

In 2022, after certain alleged breaches of the Franchise Agreement by the Hotel Operator, the Hotel Franchisor terminated the Agreement.  See Mallet Affidavit, Exhibit M.

### B. Procedural History

After the events described above, the Hotel Franchisor sued the Hotel Operator and the Guarantor.

Collectively, the Hotel Operator and the Guarantor are referred to from here as "the Defendants."  The Hotel Franchisor is referred to from here as "the Plaintiff."

The main basis of the lawsuit: the Franchise Agreement and the Guaranty were breached, and the Plaintiff is therefore entitled to damages.  See Amended Complaint ¶¶ 25-35.

### C. The Motion

Discovery is complete, and the Plaintiff now moves for summary judgment as to: (a) the Defendants' liability for breach of the Franchise Agreement and the Guaranty; (b) damages for these breaches; and (c) attorneys' fees.  See Motion for Summary Judgment at 4-5, 7-12.

The motion is before the Court.

### D. The Court's Approach

After discussing the general standards for assessing summary judgment motions, see Part II, the Court analyzes liability as to the alleged breach of the Franchise Agreement and the alleged breach of the Guaranty, see Part III.

---

[4]  The Guaranty is Exhibit D to the Mallet Affidavit.

[5]  Scott Nadel.

The Court's conclusion: the Plaintiff's motion must be granted in part.

The Court then turns to the Plaintiff's motion as to damages, see Part IV, and concludes that the motion must be granted in part, including as to liquidated damages.

## II. Standard of Review

A court must grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Dupree v. Younger, 598 U.S. 729, 737 (2023); Cellco P'ship v. White Deer Twp. Zoning Hearing Bd., 74 F.4th 96, 100 (3d Cir. 2023).

"A factual dispute is material if it might affect the outcome of the suit under the governing law." Canada v. Samuel Grossi & Sons, Inc., 49 F.4th 340, 345 (3d Cir. 2022) (cleaned up); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Such a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party[.]" SodexoMAGIC, LLC v. Drexel Univ., 24 F.4th 183, 203–04 (3d Cir. 2022) (cleaned up).

In assessing a summary judgment motion, "a district court may not make credibility determinations or engage in any weighing of the evidence[.]" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004). Instead, the court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." Canada, 49 F.4th at 345 (cleaned up); accord Tolan v. Cotton, 572 U.S. 650, 660 (2014).

## III. Liability

As noted, the Plaintiff moves for summary judgment as to the alleged breaches of the Franchise Agreement and the Guaranty. See Motion for Summary Judgment at 4-7.

As to liability, the Defendants' legal papers do not seem to suggest that they resist the entry of summary judgment.

In such contexts, there are a number of potential options. See 11 Moore's Federal Practice --- Civil § 56.99 (2024) (describing some of these options); see also Fed. R. Civ. P. 56(e).

4

Here, the Court will pursue one of the relevant options: it will determine "for itself [whether] there is no genuine dispute of material fact." United States v. Brace, 1 F.4th 137, 143 (3d Cir. 2021).

\* \* \*

Under New Jersey law,[6] the elements of a claim for breach of contract are "[1] a valid contract between the parties, [2] the opposing party's failure to perform a defined obligation under the contract, and [3] a breach causing the claimant to sustain[] damages." Nelson v. Elizabeth Bd. of Educ., 246 A.3d 802, 812 (N.J. Super. Ct. App. Div. 2021); see also Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016).

Take up now these three elements: validity, nonperformance, and damages --- first as to the Franchise Agreement, and then as to the Guaranty.

### A. Franchise Agreement

#### 1. Validity

There is no dispute that the Franchise Agreement is valid. The parties agree they entered it. See Plaintiff's Statement of Material Fact ¶ 6; Defendants' Response to Plaintiff's Statement of Fact ¶ 6.

---

[6] The parties' briefs assume that New Jersey law governs. And with good reason: the Franchise Agreement and the Guaranty each say they are controlled by New Jersey law. See Franchise Agreement § 17.6.1; Guaranty at 1; see generally Instructional Sys., Inc. v. Comput. Curriculum Corp., 130 N.J. 324, 341 (1992) ("Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice[.]"); Klaxon Co. v. Stenton Elec. Mfg. Co., 313 U.S. 487, 496–97 (1941) (requiring federal courts sitting in diversity to follow the forum state's choice-of-law rules). Moreover, "[w]here parties' briefs assume that a particular forum's law controls, such implied consent . . . is sufficient to establish choice of law." Marino v. Brighton Gardens of Mountainside, 697 F. Supp. 3d 224, 229 (D.N.J. 2023) (collecting cases) (cleaned up); see also Tryp Hotels Worldwide, Inc. v. Sebastien Hotel, LLC, 2024 WL 1327311, at *3 (D.N.J. Mar. 28, 2024); Smith v. CitiMortgage, Inc., 2023 WL 7619155, at *3 (D.N.J. Nov. 14, 2023).

5

### 2. Nonperformance

The Plaintiff asserts that the Hotel Operator failed to perform under the Franchise Agreement in three ways.

First, the Franchise Agreement required the Hotel Operator to pay certain recurring fees. See Franchise Agreement §§ 7, 11.1, 11.2; Mallet Affidavit, Exhibit C, Amendment to Franchise Agreement, Schedule C ("Amended Schedule C").

But the Hotel Operator stopped paying those fees. See Mallet Affidavit, Exhibits E-H; K-M; Nadel Deposition[7] at 58:20-59:1, 87:4-88:4.

That is nonperformance.

Second, the Franchise Agreement required the Hotel Operator to follow specific franchise standards. See Franchise Agreement § 3.2.

The Hotel Franchisor argues that the Hotel Operator did not do so. How? By not putting up appropriate hotel signs. See Motion for Summary Judgment at 4.

But this argument is not backed up by admissible evidence.

The Hotel Franchisor submitted four letters it sent to the Hotel Operator, each complaining to the Hotel Operator that the hotel signs were improper. See Mallet Affidavit, Exhibit I; Exhibit J; Exhibit K; Exhibit L.

But an accusation that someone has broken a rule is not admissible proof that they broke it. And a letter telling someone to follow the rules is not admissible proof that they were flouting them.[8]

---

[7] The Nadel Deposition is Exhibit B to the Certification of Bryan P. Couch, Esq. in Support of Plaintiff's Motion for Summary Judgment Against Defendants.

[8] To be sure, inadmissible evidence sometimes can be relied on for summary judgment purposes when a party explains how the evidence could come in at trial. See, e.g., Fraternal Order of Police, Lodge 1 v. City of Camden, 842 F.3d 231, 238–39 (3d Cir. 2016). But no such explanation has been offered here.

6

Bottom line: the motion for summary judgment is denied to the extent it alleges nonperformance based on the Hotel Operator's failure to put up the right signs.

Third, the Franchise Agreement required the Hotel Operator to pass certain quality inspections. See Franchise Agreement ¶ 3.7.

The Hotel Franchisor contends that the Hotel Operator's inspection obligations were not satisfied. See Amended Complaint ¶ 33.

But this argument is not meaningfully developed in the Hotel Franchisor's summary judgment papers. See Motion for Summary Judgment 4-5.

And moreover, the only evidence in the record for failed hotel inspections is a letter from the Hotel Franchisor to the Hotel Operator saying that an inspection was failed. But same problem as before: a letter telling someone they failed an inspection is not admissible proof that they did, in fact, fail it. And again, see footnote 8, no explanation is offered as to how the inspection failure might come into evidence at trial.

\*   \*   \*

Where things stand: the Plaintiff's motion for summary judgment on liability is granted as to nonpayment of fees, but denied for lack of admissible evidence as to the Plaintiff's other two theories.

### 3.    Damages

Turn now to the final question: was the Hotel Franchisor damaged by the Hotel Operator's nonpayment of recurring fees? Yes. Nonpayment of money that is owed is damaging.

### 4.    Conclusion

The Franchise Agreement is a valid contract. See Part III.A.1. It was breached in one of the ways set out by the Plaintiff, see Part III.A.2 (recurring fees), but there is no sufficient proof of breach as to the two others, see Part III.A.2 (improper signs and failed inspection). And the Hotel Franchisor was damaged as a result of the failure to pay the recurring fees. See Part III.A.3.

7

### B. Guaranty

Now take the Plaintiff's breach of contract claim as to the Guaranty.[9]  See Amended Complaint ¶¶ 59-61.  This claim runs against the Guarantor.

#### 1. Validity

There is no dispute that the Guaranty is valid.  The parties agree they entered it.  See Plaintiff's Statement of Material Facts ¶ 26; Defendants' Response to Plaintiff's Statement of Material Facts ¶ 26.

#### 2. Nonperformance

The Guaranty required the Guarantor to "immediately make each payment and perform or cause [the Hotel Operator] to perform, each unpaid or unperformed obligation[] of [the Hotel Operator] under the [Franchise Agreement]" upon two events occurring: (1) "a default by [the Hotel Operator]," and (2) "notice from [the Hotel Franchisor]."  Guaranty at 1.

The Guaranty was triggered here.

First, a default occurred.

Under the Franchise Agreement, it is a default when the Hotel Operator "do[es] not pay [the Hotel Franchisor] when a payment is due under [the Franchise] Agreement."  See Franchise Agreement § 11.1.

As determined above, see Part III.A, the Hotel Operator did not pay the recurring fees --- a required payment under the Franchise Agreement.  This is a default.

Second, the Hotel Franchisor gave notice to the Guarantor.

The Hotel Franchisor provided notice that the Franchise Agreement was breached, see Mallet Affidavit, Exhibits E-L,[10] and

---

[9] "A guaranty is a contract that is linked to another contract, by which a party to the second contract (the guarantor) agrees to take on the obligations of a party to the first contract if it does not meet its obligations.  In the typical case, if the obligation established under the first contract is breached, and not satisfied through payment or performance, then the guarantor is on the hook, and becomes obligated."  Tryp Hotels, --- F. Supp. 3d at ---, 2024 WL 1327311, at *15 (cleaned up).

[10] No party contends this notice was insufficient.

8

the Guarantor was then obligated to himself step up and pay. See Guaranty at 1; Mallet Affidavit, Exhibit M.  He did not do so.  See Nadel Deposition at 87:4-88:4.

All of this adds up to nonperformance by the Guarantor of his obligations under the Guaranty.

### 3. **Damages**

The final question: was the Hotel Franchisor damaged as a result of the Guarantor not covering the Hotel Operator's missed payments?  Yes.  If the Guaranty had not been breached, the Hotel Franchisor would have been paid.  See Guaranty at 1.

## IV. **Damages**

Given the breaches of contract described above, see Part III, the Plaintiff argues it is entitled to summary judgment as to three types of damages, as well as interest.  See Motion for Summary Judgment at 7-8.

Take these in turn.

### A. **Recurring Fees**

First, the Plaintiff moves for summary judgment as to the precise amount of recurring fees it is owed.  The Plaintiff calculates that these damages are $388,523.58.  See Motion for Summary Judgment at 8.  The Defendants argue that this is an incorrect tally.  See Brief in Opposition at 3-4.

Per the Franchise Agreement: the relevant recurring fees were to be based on monthly gross room revenues.  See Franchise Agreement §§ 3.6.4, 7.1, 7.1.1, 7.1.2; Amended Schedule C.

Calculating these revenues first required reporting hotel room occupancy to a property management system.  See Nadel Deposition at 64:2-25.

But the hotel "had no property management system . . . six months in" to input room occupancy numbers.  Id. at 64:21-23; see also Mallet Affidavit, Exhibit J; Exhibit K; Exhibit L.  As such: "you weren't able to pull the property management system numbers." Id. at 88:8-9.

This creates a genuine issue of material fact as to how many rooms were occupied and therefore what the gross room revenue was in a given month.  That precludes summary judgment as to the amount of damages.  See generally Paladino v. Newsome, 885 F.3d

203, 209 (3d Cir. 2018); accord, e.g., Lupyan v. Corinthian Colls., Inc., 761 F.3d 314 at 320-21 (3d Cir. 2014); Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 161 (3d Cir. 2009).

### B. Liquidated Damages

Next, the Plaintiff moves for summary judgment on its claim for liquidated damages in the amount of $154,000. See Motion for Summary Judgment at 8-11.

Liquidated damages become due if the Franchise Agreement is terminated by the Hotel Franchisor due to a default that is not cured. See Franchise Agreement § 11.1, 11.2, 12.1.

These boxes are checked. A default occurred. See Part III.A. It was not cured. See Nadel Deposition at 58:20-59:1, 87:4-88:4. And the Franchise Agreement was terminated. See Mallet Affidavit, Exhibit M.

Regarding the amount of damages: liquidated damages "will not be less than the product of $2,000 multiplied by the number of [authorized] guest rooms." See Franchise Agreement § 12.1. The Hotel was authorized 77 rooms. See Franchise Agreement, Schedule B. Multiplied by $2,000, that puts the minimum amount of liquidated damages at $154,000.

The Defendants develop no meaningful counterargument to this.

In light of the above, the Plaintiff's motion for summary judgment as to liquidated damages in the amount of $154,000 is granted.

### C. Attorneys' Fees

The Hotel Franchisor also moves for summary judgment as to the award of attorneys' fees.

"[A] prevailing party can recover [attorneys'] fees if they are expressly provided for by . . . contract." Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 385 (2009) (cleaned up). Attorneys' fees provisions "should be strictly construed in light of [the] general policy disfavoring the award of attorneys' fees." Id.

Section 17.4 of the Franchise Agreement provides that "the non-prevailing party will pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement[.]" Franchise Agreement § 17.4.

10

There are any number of open issues remaining in this litigation. Therefore, it is premature to determine who the overall prevailing party will be and what fees might be recoverable.

### D. Prejudgment Interest

The Hotel Franchisor also argues it is entitled to prejudgment interest on the recurring fees and liquidated damages. See Motion for Summary Judgment at 11-12.

Per the Franchise Agreement, "interest is payable" when the Hotel Operator receives an "invoice on any past due amount payable to [the Hotel Franchisor] under this [Franchise] Agreement at the rate of 1.5% per month[.]" Franchise Agreement § 7.3 (cleaned up).

As to recurring fees: the Court has denied the Hotel Franchisor's motion as to the amount of recurring fee damages. See Part IV.A. Accordingly, the Court denies the motion for prejudgment interest on recurring-fee damages as unripe.

As to liquidated damages: the Court has granted the Hotel Franchisor's motion as to the amount of liquidated damages. See Part IV.B.

But as to whether prejudgment interest on the liquidated damages is now "due," Franchise Agreement § 7.3, there is a wrinkle.

Under the Franchise Agreement, payment of prejudgment interest must be made upon the Hotel Operator's receipt of an invoice for liquidated damages. See id. But no invoice has been put forward, just a notice of termination.[11] See Mallet Affidavit, Exhibit M. And the Plaintiff does not press any argument, for now, that explains whether the notice can count as an invoice.

Therefore, it is premature to determine how much interest is owed as to the liquidated damages.

---

[11] To be sure, an invoice is attached to the notice of termination. See Mallet Affidavit, Exhibit M. But that invoice covers the missing recurring fees, not the liquidated damages.

11

## V. Conclusion

The Hotel Franchisor's motion for summary judgment is granted as to (a) liability on recurring fees and (b) liquidated damages in the amount if $154,000.[12]

IT IS on this 23rd day of September, 2024 so **ORDERED**.

_____
Michael E. Farbiarz, U.S.D.J.

---

[12] It may be that the proof problems that impacted two of the Plaintiff's breach of contract claims, see Part III.A.2, can be remedied. If the relevant evidentiary hurdles are cleared, it might then be necessary to consider whether the Nadel Declaration and its accompanying exhibit, submitted after the close of discovery, are or are not cognizable here. See generally Ng v. Lahood, 952 F. Supp. 2d. 85, 93 (D.D.C. 2013) (arguably implying that post-discovery declarations may be relied upon); Fiumano v. Metro Diner Mgmt. LLC, 2022 WL 2541354, at *4 n.4 (E.D. Pa. July 7, 2022) (same); Riemensnyder v. Paragon Sys., 2022 WL 1123187, at *3 (M.D. Pa. Apr. 14, 2022) (same); Scalia v. Elder Res. Mgmt., Inc., 2020 WL 7390871, at *3 (W.D. Pa. Dec. 16, 2020).